IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EDWIN RODRIGUEZ-LOPEZ,
NYDIA TORRES-PEREZ, and their
conjugal partnership

Plaintiffs

vs

PUERTO RICO ELECTRIC POWER
AUTHORITY; JORGE
HERNANDEZ-PEREZ, in his
personal and official capacities,
ZORAIDA FUENTES-MOURE, and
their conjugal partnership,; JUAN
ALICEA-FLORES, in his personal
and official capacities, JANE DOE,
and their conjugal partnership;
VICTOR M. OPPENHEIMER-SOTO,
in his personal and official
capacities, SUSAN ROE, and their
conjugal partnership; MARIA M.
MENDEZ-RIVERA, in her personal
and official capacities, JOHN ROE,
and their conjugal partnership;
DAVID MELENDEZ, in his personal
and official capacities, JANE DOE,
and their conjugal partnership;
MANUEL PEREZ-SOLER, MARIA
TERESA ADAMES-AQUINO, and
their conjugal partnership; ANGEL
FIGUEROA-JARAMILLO, SUSAN
ROE, and their conjugal partnership;
JOHN ROE, JANE ROE, and their
conjugal partnership; INSURANCE
COMPANIES A,B,C

Defendants

CIVIL 14-1753CCC

**OPINION AND ORDER**

    This is a civil rights action under 42 U.S.C. § 1983 claiming the violation of rights guaranteed under the First, Fifth and Fourteenth Amendments. Supplemental claims under the Constitution and laws of Puerto Rico have also been asserted. Plaintiff Edwin Rodríguez-Lopez (Rodríguez) is an employee of the Puerto Rico Electric Power Authority (PREPA) who avers that due to his

CIVIL 14-1753CCC                              2

political affiliation to the New Progressive Party (NPP) he was suspended and disciplined based on fabricated charges and also required to make a false sworn statement and give false testimony in administrative and court proceedings against one of his supervisors who also belonged to the NPP. Rodríguez' wife, Nydia Torres-Pérez (Torres), joins him as a plaintiff in the claims under Puerto Rico law.  Defendants are the PREPA, five of its officers sued both in their official and personal capacities, two members of UTIER (PREPA's labor union), as well as their spouses and conjugal partnerships. Before the Court now is a Motion to Dismiss filed by PREPA and four of the officers sued in their official capacities (**d.e. 19**), which was joined by the five PREPA individual defendants in their personal capacities (d.e. 22), and which plaintiffs have duly opposed (d.e. 20).

      The relevant facts are taken from plaintiffs' verified complaint (d.e. 1), as we must at this stage.  Plaintiff Rodríguez began to work for PREPA in the year 2000.  He is a member of the  NPP, has identified publicly at PREPA with the NPP, and has supported NPP candidates with campaign contributions.  At the time of the events described in the complaint, he worked at the Isabela office of PREPA.  On August 19, 2013, when Rodríguez arrived to work, he greeted the manager of the Isabela office, Nydia Soto, who was reviewing registries on the arrival and departure of employees kept by the office's security guards.  Soto asked Rodríguez why he had written down in  the sign in/sign out sheet that he left at 4:00 PM the day before when the guards' registry showed that he had left earlier.  Their joint review of the guards' records revealed that the guard had registered his arrival time from the field in a PREPA vehicle as the time he had left for the day, when in fact he had remained working after he returned from the field.  Rodríguez also observed

CIVIL 14-1753CCC                              3

other significant errors in the guards' registries.  Soto's reliance on the guards' records, in any event, appeared to be against PREPA's rules, as it is further alleged that employees' time records are kept using sign in/sign out sheets, that PREPA had agreed with UTIER not to use the guards' access control system to discipline employees for time allegedly not worked, that PREPA's legal division had determined that the guards' access records would not be used to determine the arrival or departure times of PREPA employees and that, in the particular case of the Isabela office, its guards did not have an accurate chronometer prior to July 2013.

     After meeting with Soto, Rodríguez left the office to begin his work route but then received a communication that he should not leave because personnel from Arecibo were coming to the Isabela office. About a dozen PREPA employees, including Rodríguez, were escorted to an office.  The employees were called one by one and handed a letter by defendant Jorge Hernández-Pérez (Hernández), who is described as having worked in the Quebradillas' office of PREPA where he knew plaintiff Rodríguez and his political affiliation.  Hernández is a member of the Popular Democratic Party (PDP), and is imputed by plaintiff as having concocted a plan together with the other defendants to dismiss supervisors belonging to the NPP based on fabricated charges from subordinates such as Rodríguez who would be fearful of losing their own jobs and threatened with criminal prosecution.  It is claimed that, true to that plan, the letter handed to Rodríguez stated that he had been repeatedly late, had misused PREPA's property, had falsified documents, had limited PREPA's production, had committed theft and embezzlement and had abandoned his employment.

CIVIL 14-1753CCC                           4

UTIER leaders then called plaintiff Rodríguez and the other union members who had received similar letters to attend a meeting that same afternoon at its facilities in Camuy. At the meeting, defendant Angel Figueroa-Jaramillo (Figueroa) informed Rodríguez and the other suspended/dismissed employees[1] that he had known about the suspensions/dismissals for the last 2-3 weeks and that he had never seen so many employees being dismissed from one regional office at the same time. Figueroa also told them that the Union would not be getting them lawyers for their informal hearings, that they should not hire their own attorneys because it was his experience that private lawyers only ruined cases, and that no one should speak at the informal hearings and they should wait instead for the formal hearings to present exculpatory evidence, but that said hearings could take years to be scheduled. Figueroa indicated that the whole matter had to be settled quickly before the press learned about it as PREPA's image had suffered a great deal recently. He further warned the suspended employees that they could be facing criminal charges because they had been accused of stealing time from PREPA and instructed them not to talk about what had happened with anybody. Figueroa told them that if criminal charges were filed, the UTIER could not defend them. Figueroa stated to the employees that he was going to meet the following day with defendant Víctor M. Oppenheimer (Oppenheimer), the director of PREPA's legal division, and that they would have to accept whatever he was willing to offer. Oppenheimer is also identified in the complaint as a leader of the PREPA organization "Energia Popular,"

---

[1] Although the complaint on some occasions makes reference to the adverse action taken against Rodríguez as a dismissal and in others as a suspension, it appears that Rodríguez was in fact suspended and not dismissed.

CIVIL 14-1753CCC                          5

composed of PREPA employees affiliated to the PDP.  Figueroa said that he would try to keep the employees' medical insurance in place until the formal hearings, but warned them that he could not guarantee that.  He also said that the employees should withdraw any money they had in PREPA's pension plan because it would be more difficult to withdraw it later.  Figueroa quickly rebuffed one employee who told him that the suspensions were politically motivated, telling him that everybody knew he was a member of the pro-independence party and that he was not going to talk about politics.  It is further alleged that this conduct by Figueroa contrasted sharply with his conduct in other labor disputes, where he supposedly delighted to make PREPA look bad and was always ready to call for a general strike in response to PREPA's actions, and is proffered to show that he conspired with the PREPA defendants "to harm NPP members and to benefit PDP members."

     On August 21, 2013, defendant Manuel Pérez-Soler (Pérez), who is only identified as an UTIER member that served as city council member in the PDP administration of Isabela, met with the suspended employees to inform them of the settlements offered by Oppenheimer.  While not stated directly in the complaint, it may be gleaned from its disorganized allegations that Pérez served as a lawyer for the UTIER.  Pérez told the suspended employees what each had to say in a sworn statement to procure the dismissals of their NPP-affiliated supervisors, stating that the making of the affidavits was what he had negotiated with Oppenheimer as a condition of their being allowed to return to work.  Pérez told Rodríguez specifically that his case was the worst of all given the number of minutes with which he was being imputed of having stolen, and that he would have to accept 40 hours of suspension, one year of probation, repay the time allegedly stolen and provide the sworn statement

CIVIL 14-1753CCC                          6

against his supervisor.  Pérez similarly discussed with all the other suspended employees the conditions placed in exchange for their return to work, and during this process he consulted over the telephone with Oppenheimer.

Starting on August 22, 2013[2] and continuing during subsequent days, the suspended employees were called to what are described as "individual meetings" but which appeared to be informal hearings on their charges.  Pérez told each of the union members that no one was going to testify at the "meetings" because it went badly for union members that did.  Specifically as to Rodríguez' interview, he merely answered basic questions related to his name and address but when questions about his alleged misconduct were made Pérez wrote in his notebook that he should invoke his right not to testify. Rodríguez was warned by PREPA that if he testified his  answers could be used against him in a court of law.  PREPA did not offer immunity from criminal prosecution to Rodríguez, and the UTIER defendants (Figueroa and Pérez) did not request immunity for him either.  After this "meeting"/informal hearing, and as Rodríguez did not offer any evidence in his defense, he was suspended without pay and his medical insurance card was taken away from him.

Once all the "meetings"/informal hearings concluded, Pérez told all the suspended employees to go directly to the UTIER headquarters in Camuy. Once there, Pérez told them that the terms of their agreements with PREPA had changed, and that now they would have to testify against three NPP-affiliated management employees, accept the misconduct alleged, some would have to return the "stolen" money, and some would be placed on probation for one year.  The three NPP-affiliated supervisors against whom

---

[2] While the complaint states the year as being 2014, this is obviously a typographical mistake since it previously made continuous references to 2013 as the year when the suspensions took place.

CIVIL 14-1753CCC                                7

they would be required to testify were Jose Torres-Pérez, Nydia Soto-Quiñones and Jose Feliciano-Bolet (Feliciano), who were eventually fired. Pérez explained that defendant María Méndez (Méndez) had changed the agreements to require all the suspended employees to testify against these three NPP-affiliated supervisors, and that when he first informed the employees of the original agreement it had still not been approved by defendant Juan Alicea-Flores (Alicea), who at the time was PREPA's Executive Director. Méndez was at the time the Secretary of PREPA's Board of Directors and was also its Director of Human Resources. It is alleged that both Alicea and Méndez were members of the PDP. Plaintiff Rodríguez was told by Pérez that he would also have to sign a statement implicating Feliciano in order for him to be able to return to work because the charges against him were very serious. Pérez waited for a call from Oppenheimer, who once he called then informed all the employees that if they did not accept the offer they could be referred to the Commonwealth's Ethics Office, to the Justice Department and to the Comptroller. After discussing the matter with the employees, Pérez called Oppenheimer back and informed him that everyone was going to accept and testify. Pérez then told the suspended employees that they should go to the Arecibo regional office the following day and that as soon as they signed the statements against the NPP-affiliated supervisors they would get back their medical insurance cards and would return to work.

On August 22, 2013, the PREPA defendants had Rodríguez sign a settlement agreement stating that he would not sue PREPA. On September 10, 2013, Oppenheimer visited the PREPA office in Isabela and told the union members who had signed the sworn statements and settlement agreements that they would have to repeat their testimony two days later in an

CIVIL 14-1753CCC                                8

injunction hearing scheduled in the local court case brought by the dismissed NPP-affiliated supervisors. It is further alleged in the complaint that on September 10, 2013, defendant Hernández stated that he did not care if the NPP supervisors sued him for political discrimination because he had no money with which to pay a judgment. Oppenheimer responded to him that no one was going to be able to sue him because he had placed some PDP affiliates in the group of the suspended workers to refute any such allegation.

In August 2014, Feliciano sued Rodríguez and a number of other union members for allegedly conspiring with PREPA to violate his rights, but Feliciano subsequently dismissed his complaint against Rodríguez once he confirmed that he had been coerced to provide testimony against him. On September 19, 2014, in a meeting called by PREPA, defendant David Meléndez (Meléndez), a PREPA in-house counsel, told plaintiff Rodríguez and the other PREPA workers that they should testify against the NPP supervisors. Meléndez also told the union members that they had never been threatened with criminal charges, even though the suspension letter received by Rodríguez allegedly asserted that he had committed criminal offenses. Meléndez also warned the UTIER members at the meeting against telling their attorneys what he had said about PREPA being unable to refer them for criminal charges in contradiction to the letters the union members had received and the threats that the UTIER leader defendant Figueroa had previously made.

In their Motion to Dismiss, defendants have averred three grounds in support of their request for dismissal: (1) that there are no factual allegations in the complaint to support the existence of a conspiracy among the

CIVIL 14-1753CCC                              9

defendants to deprive plaintiff Rodríguez of his federal constitutional rights, (2) that all the claims are time barred and (3) that Rodríguez is a party to a settlement agreement through which he accepted to abstain from suing PREPA in exchange for the elimination of the charges filed against him and allowing him to get his job back.  Plaintiffs have responded to each of these contentions in their opposition.  We only address the moving defendants' second ground for we find it to be dispositive.

In support of their argument that the complaint is time-barred, the moving defendants adduce that all the relevant events described in the complaint took place between August 19 and August 22, 2013, while the complaint was not filed until October 9, 2014, beyond the one-year period of limitations applicable to plaintiffs' § 1983 and tort actions under Puerto Rico law.  See 32 L.P.R.A. § 5298(2);  Chardón v. Fernández, 454 U.S. 6, 7, 102 S.Ct. 28, 70 L.Ed. 2d 6 (1981) (holding that claims under section 1983 were barred by the applicable one-year statute of limitations).  Plaintiffs invoke the doctrine of continuing violations.  They refer to an event that allegedly took place on September 19, 2014 – when defendant Meléndez told Rodríguez and the other previously suspended PREPA employees that they should testify against the NPP supervisors – as the latest discrete act of discrimination which occurred less than a month before the filing of the complaint and squarely within the limitations period.

In Muñiz-Cabrero v. Ruiz, 23 F.3d 607, 610 (1st Cir. 1994), the Court of Appeals aptly explained the application of the "continuing violation" doctrine in the context of First Amendment political discrimination claims:

> To establish a continuing violation, plaintiff must allege that a discriminatory act occurred or that a discriminatory policy existed within the period prescribed by the statute. There are two varieties of continuing violations: serial and systemic. Serial violations are

CIVIL 14-1753CCC                10

> composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate, [actionable] wrong. Plaintiff bears the burden of demonstrating that at least one discriminatory act occurred within the limitations period. It is not enough to show that plaintiff is merely feeling the effects of some earlier discriminatory action. In other words, there is a critical distinction between a continuing act and a singular act that brings continuing consequences in its roiled wake. Systemic violations, on the other hand, need not involve an identifiable discrete act of discrimination transpiring within the limitations period. Rather, what must be shown is that plaintiff has been harmed by the application of a discriminatory policy or practice and that such policy continues into the limitations period.

(Internal citations omitted) (internal quotation marks omitted).

"Although the limitations' clock generally starts with the commission of a discriminatory act, a true 'continuing violation' rewinds the clock for each discriminatory act along the way." Mack v. Great Atlantic & Pacific Tea Co., 871 F.2d 179, 183 (1st Cir. 1989). Still, the "proper focus in continuing violation analysis is on the time of the discriminatory act, not the point at which the consequences of the act become painful." Id., at p. 611 (emphasis in original). A continuing violation is not established if the complaint only demonstrates that plaintiffs continue to suffer from the continued effects of one discriminatory act. See De Leon Otero v. Rubero, 820 F.2d 18, 19 (1st Cir. 1987); Goldman v. Sears, Roebuck & Co., 607 F.2d 1014, 1018 (1st Cir. 1979). Thus, if plaintiffs' action consists of a discriminatory event with subsequent effects that are not actionable in and of themselves, the accrual date is the date of the initial event.

In this action, it is clear from the allegations of the complaint and all reasonable inferences derived therefrom that the only actionable discriminatory act against plaintiff Rodríguez took place when he was charged with repeated tardiness and other instances of misconduct for which he was suspended and in exchange for reduced disciplinary sanctions was then required to sign a

CIVIL 14-1753CCC 11

sworn statement and to agree to testify against his NPP-affiliated supervisor. This event, which happened in August 2013, is clearly time-barred. The only incident which Rodríguez advances as having occurred within the limitations period, defendant Meléndez' indication to him in September 2014 that he should testify against his NPP supervisor, is but a sequella of the August 2013 discriminatory act. It merely consists of a reminder to plaintiff by a PREPA in-house counsel that he had to comply with one of the conditions to which he consented as part of the agreement reached with PREPA a year before. It, however, does not serve to "rewind the clock" on the already time-barred discriminatory event.

For the reasons stated, we find that plaintiffs' complaint against the moving PREPA defendants, to wit: the Puerto Rico Electric Power Authority, Jorge F. Hernández-Pérez, Juan Alicea-Flores, Víctor Oppenheimer-Soto, María Méndez-Rivera and David Meléndez is time-barred. Accordingly, their Motion to Dismiss (**d.e. 19**) is GRANTED. Partial judgment shall be entered accordingly.

SO ORDERED.

At San Juan, Puerto Rico, on March 31, 2016.

S/CARMEN CONSUELO CEREZO
United States District Judge